UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VINCENT CUSUMANO ARCHITECT P.C. and VINCENT CUSUMANO,<br><br>Plaintiff,<br><br>v.<br><br>BERKSHIRE HATHAWAY DIRECT INSURANCE COMPANY d/b/a THREE BY BERKSHIRE HATHAWAY, TODD SHARPEE, JOHN DOES 1-10 (names being fictitious and unknown), and ABC Corps. 1-10 (names being fictitious and unknown),<br><br>Defendants. | Civil Action No. 23-cv-22970 (JXN)(JSA)<br><br>**OPINION** |

**NEALS**, District Judge

This matter comes before the Court by way of Defendants, Berkshire Hathaway Direct Insurance Company ("Berkshire") d/b/a Three By Berkshire Hathaway and Todd Sharpee's ("Sharpee") (collectively, "Defendants") partial motion to dismiss (ECF No. 10) Plaintiffs Vincent Cusumano ("Cusumano") and Vincent Cusumano Architects P.C.'s ("VCA") (collectively, "Plaintiffs") Complaint (ECF No. 1), pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs opposed the motion (ECF No. 16), and Defendants replied in further support (ECF No. 17). Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion to dismiss (ECF No. 10) is **GRANTED**.

## I. BACKGROUND[1]

This matter arises from a dispute over the terms of an insurance contract. Plaintiff Cusumano is a licensed architect and the founder, principal architect, and sole shareholder of Vincent Cusumano Architect P.C. ("VCA"). (Complaint, ("Compl.") ¶¶ 11, 12, ECF No. 1.) VCA specializes in large-scale projects including retail stores, shopping malls, and public buildings. (Compl. ¶ 13.) Plaintiffs are citizens of New Jersey. (Compl. ¶ 2.)

Defendant Berkshire is a Nebraska Stock Insurance Company with a principal place of business in Omaha, Nebraska. (Compl. ¶ 4.) Defendant Sharpee, a citizen of Nebraska, is employed by Berkshire as a Small Business Advisor. (Compl. ¶ 17.)

In or around the fall of 2021, Plaintiffs contacted Berkshire about replacing their then-existing professional liability policy. (Compl. ¶ 16.) Plaintiffs allege that Cusumano "specifically told Defendants that the new policy needed to provide professional liability coverage, on a claims made basis, for potential claims arising out of Plaintiffs' prior work" and that the policy would be "worthless" if it failed to do so. (Compl. ¶¶ 21, 22.) Plaintiffs claim that Defendants "repeatedly confirmed and otherwise represented" that the new policy would cover such claims. (Compl. ¶ 24.) Based on Defendants' representation, Cusumano purchased professional liability Policy No. CP140179382P2022, effective from February 24, 2022, to February 24, 2023, from Berkshire through Sharpee for an annual premium of $22,492.18. (Compl. ¶ 25; *see also* Certification of Daniel E. Bryer ("Bryer Cert."), Ex. B, copy of Berkshire Hathaway Direct Insurance Company's Policy Number CP140179382P2022 ("Berkshire Policy"), ECF No. 11-2.)[2]

---

[1] When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[2] Defendants have provided a copy of the Policy as an exhibit in support of their motion. A court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus*., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

According to Plaintiffs, Defendants, without notice [], included the following language in the Berkshire Policy:

> We also cover (i) claims of negligence, errors, or omissions in providing professional services, and (ii) claims against directors or officers of your business arising from their actions taken on behalf of your business. **For these kinds of claims, if your business first learns about the claim during this policy, and previously had continuous insurance coverage that would have covered the claim, we will cover that claim even though it is not the result of an occurrence during this policy.**

(Compl. ¶¶ 28; Berkshire Policy at *3)[3] (emphasis added.) The Berkshire Policy was issued with a three-month gap in professional liability coverage between the expiration of Plaintiffs' prior policy, in November of 2021, and the commencement date of the Berkshire Policy, February 24, 2022. (Compl. ¶¶ 29, 43.) Plaintiffs contend that Defendants "knowingly" issued the Berkshire Policy with a three-month gap in professional liability coverage between the expiration of Plaintiffs' prior policy and the commencement date of the Berkshire Policy "so as to preclude coverage for future professional liability claims arising out of Plaintiffs' prior work." (Compl. ¶¶ 29, 30.) Additionally, Plaintiffs allege that Defendants did not inform them that it was possible to "buy back" or otherwise cover the purported coverage gap in exchange for a higher premium. (Compl. ¶ 34.)

On or about July 31, 2023, A.J. Richard and Sons, Inc., and P.C. Richard & Son Inc., sued Plaintiffs for damages exceeding 1.5 million in the Supreme Court of the State of New York, County of Nassau, in an action entitled *A.J. Richard and Sons, Inc. and P.C. Richard & Son Inc. v. Vincent Cusumano Architect PC a/k/a Vincent Cusumano Architect P.C. and Vicent Cusumano*, Index No. 612142/2023. The lawsuit pertained to the renovation of a commercial property in Brooklyn, New York, which occurred between November 2017 and January 30, 2023 (the

---

[3] Pin-cites preceded by an asterisk (*) refer to the pagination atop the CM/ECF header.

"Underlying Action"). (Compl. ¶¶ 37-39.) Plaintiffs notified Defendants of the action against them and submitted a claim for defense and indemnification. (Compl. ¶ 41.) On September 6, 2023, Defendants denied coverage based on the continuous coverage provision, requiring Plaintiffs to "retain counsel at significant cost and face risk of financial ruin." (Compl. ¶¶ 43-45.)

Plaintiffs filed their Complaint in the Superior Court of New Jersey, Law Division, Essex County, on October 31, 2023. (Compl. at *35, 36.) In the Complaint, Plaintiffs assert thirteen causes of action against Defendants including: (1) declaratory judgment pursuant to N.J.S.A. 2A:16-50, *et seq.*; (2) specific performance; (3) breach of contract; (4) promissory estoppel; (5) quantum meruit; (6) breach of covenant of good faith and fair dealing; (7) common law fraud; (8) violation of N.J.S.A. 56:8-1, *et seq.*; (9) negligent/intentional misrepresentation; (10) professional negligence/malpractice; (11) negligence; (12) breach of fiduciary duty; and (13) reformation. (Compl. 47-118.) On December 8, 2023, Defendants removed the action to this Court (*See* Notice of Removal ("NOR"), ECF No. 1.)

On January 12, 2024, Defendants moved to dismiss Counts One (declaratory judgment pursuant to N.J.S.A. 2A:16-50, *et seq.*), Two (specific performance), Three (breach of contract), Five (quantum meruit), Six (breach of covenant of good faith and fair dealing), Seven (common law fraud), and Twelve (breach of fiduciary duty) of Plaintiffs' Complaint, and their demand for punitive damages pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. (ECF No. 10.) Plaintiffs opposed the motion (ECF No. 16), and Defendants replied in further support (ECF No. 17).

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Notably, on a Rule 12(b)(6) motion to dismiss, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B. Rule 9(b)

For claims of fraud, however, Rule 9(b) imposes a heightened pleading standard. *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 510 (D.N.J. 1999). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A claimant "alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (alteration in original) (internal citation and quotation marks omitted).

### III. DISCUSSION

#### A. Plaintiffs' Declaratory Judgment Claim (Count 1)

Plaintiffs seek declaratory judgment pursuant to the New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-50, *et seq.* (Compl. ¶¶ 47-49.) Plaintiffs assert that "[a] judicial determination and a declaration of the rights and responsibilities of the parties is necessary and appropriate at this time because Plaintiffs have no adequate remedy at law [that] will resolve the current controversy." (Compl. ¶ 50.) Plaintiffs contend that Defendants were contracted to "provide Plaintiffs with professional liability insurance for claims arising out of prior work," but "[c]ontrary to that agreement" issued a policy whose "text . . . does not reflect the agreement and provides Plaintiffs with no meaningful . . . coverage," and ask this Court to interpret the Berkshire Policy "in accordance with the representations and agreement of the parties." (Compl. ¶¶ 51-54.) However, the written insurance contract contains clear language precluding coverage of claims arising from such work where the insured did not maintain continuous insurance coverage.

Federal courts sitting in diversity will treat a prayer for declaratory judgment brought under state law "as though it had been filed under the [federal Declaratory Judgment Act]." *Tumi, Inc. v. Factory Mut. Ins. Co.*, No. 21-cv-2752, 2021 WL 4170051, at *1 n.3 (D.N.J. Sept. 14, 2021) (quoting *BCB Bancorp, Inc. v. Progressive Cas. Ins. Co.*, No. 13-cv-1261, 2013 WL 8559731, at *3 (D.N.J. Oct. 9, 2013)). The Declaratory Judgment Act ("DJA") allows federal courts to "declare the rights and other legal relations of any interested party seeking such [a] declaration." 28 U.S.C. 2201(a). The DJA, provides "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a). "Declaratory judgment is an appropriate remedy when

it will terminate the controversy giving rise to the proceeding[, but] the DJA grants discretion to federal district courts, who have no compulsion to exercise their jurisdiction over cases seeking declaratory judgment." *Greg Prosmushkin, P.C. v. Hanover Ins. Grp.*, 479 F. Supp. 3d 143, 147 (E.D. Pa. 2020) (quotations omitted).

The Third Circuit requires that declaratory judgments "have utility," *Travelers Insurance Co. v. Obusek*, 72 F.3d 1148, 1155 (3d Cir. 1995), and "be of significant practical help in ending the controversy." *Step-Saver Data Sys. v. Wyse Tech.*, 912 F.2d 643, 650 (3d Cir. 1990). While Rule 57 of the Federal Rules of Civil Procedure states "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate," (Fed. R. Civ. P. 57), our Court of Appeals urges courts to exercise their discretion to decline proceeding with declaratory judgments when they duplicate other claims. *State Auto Insurance Company v. Summy*, 234 F.3d 131, 134 (3d Cir. 2000). "A federal court should also decline to exercise its discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation." *Id.* at 135.

Courts in this District generally decline to grant declaratory relief when the claim for declaratory judgment is entirely duplicative of another claim in the cause of action. *See, e.g.*, *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 379 (D.N.J. 2015) ( dismissing plaintiffs' claim seeking a declaration that certain grocery stores engaged in false advertising as redundant of plaintiffs' breach of express warranty and New Jersey Consumer Fraud Act (CFA) claims); *Maniscalco v. Brother International Corporation (USA),* 627 F. Supp. 2d 494, 505 (D.N.J. 2009) ( dismissing plaintiffs' declaratory judgment claim as duplicative of their allegations under the CFA, the court reasoned, "[i]f there is a finding in favor of Plaintiffs on their CFA claims, then an actual judgment, rather than a mere declaration, would be entered stating that [the

defendant's] actions have violated the CFA and further that Plaintiffs, including class members, are entitled to relief." *Id.* at 505).

The Third Circuit directs that "[d]eclaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct . . . Declaratory judgments are not meant simply to proclaim that one party is liable to another." *Andela v. Admininstrative Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014). Courts have dismissed declaratory judgment claims where "actual controversies" have already occurred, reasoning that "address[ing] uncertainty as to legal rights between [adverse] parties" following the commencement of litigation does not serve the DJA's "prophylactic purpose." *See id.* at 75; *see also Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) ("Declaratory judgment is inappropriate solely to adjudicate past conduct[, n]or is declaratory judgment meant simply to proclaim that one party is liable to another.").

Here, litigation has indeed already commenced, and Defendants have declined to defend Plaintiffs' submitted claim; therefore, declaratory judgment under the DJA is not an appropriate remedy. *See Kousis v. Fidelity & Guar. Ins. Underwriters, Inc.*, No. 22-cv-6530, 2023 WL 6141237, at *7 (D.N.J. Sept. 20, 2023) ("Where an insured's claim is prospective, a declaratory judgment might serve the useful purpose of clarifying the relations of the parties[, b]ut where . . . a claim has been made, coverage has been denied, and the insured has sued based on that denial, a declaratory judgment would be superfluous."); *see also Corliss*, 200 F. App'x at 84.

Moreover, Plaintiffs' declaratory judgment claim cannot survive because it is duplicative of their breach of contract claim. Courts in this Circuit will "routinely dismiss declaratory judgment claims [that] are duplicative of breach of contract claims." *Reliable Paper Recycling,*

*Inc. v. Helvetia Glob. Sols., Ltd.*, No. 23-cv-22124, 2024 WL 1461346, at *4 (D.N.J. Apr. 4, 2024) (quoting *AV Design Servs., LLC v. Durant*, No. 19-cv-8688, 2021 WL 1186842, at *12 (D.N.J. Mar. 30, 2021)). Plaintiffs' declaratory judgment claim, as pled, is "based on the same issues" as the breach of contract claim. *See id.*; *see also Liberty Mut. Fire Ins. Co.*, No. 22-cv-0003, 2023 WL 3597675, at *5 n.8 (D.N.J. May 23, 2023) (quotation omitted) ("Where a party brings claims for both declaratory relief and breach of contract, such claims are duplicative in that adjudication of the breach of contract claim will still resolve the same issue and necessarily decide the question raised by the declaratory judgment claim.").

Accordingly, Defendants' motion to dismiss Plaintiffs' declaratory judgment claim is granted and Count 1 will be dismissed without prejudice.[4]

### B. Plaintiffs' Specific Performance Claim (Count 2)

Defendants move to dismiss Plaintiffs' claim of specific performance, arguing that it is an equitable remedy that cannot stand as an independent cause of action. (*See* ECF No. 10-1 at 9.) In their opposition, Plaintiffs do not dispute Defendants' assertion that specific performance is not a claim; instead, Plaintiffs argue that this Court should construe the specific performance claim as a request for equitable relief. (*See* ECF No. 17 at 11.) "However, a complaint cannot be amended (or supplemented) by way of an opposition brief." *Son v. Lynch*, No. CV 24-01051 (JXN)(JRA), 2025 WL 850921, at *3 (D.N.J. Mar. 17, 2025) (citing *Pennsylvania ex rel. v. Zimmerman v. Pepsico,* 836 F.2d 173 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

---

[4] The Court dismisses without prejudice due to the dismissal of the breach of contract claim without prejudice, with the ability to amend.

Further, New Jersey law provides that "specific performance is an equitable remedy that is appropriate when the legal remedy of compensation is inadequate or incalculable." *In re Nickels Midway Pier, LLC*, 341 B.R. 486, 499 (D.N.J. 2006), *aff'd*, 255 F. App'x 633 (3d Cir. 2007). The entitlement of specific performance against an insurer may be appropriate for *future* costs of remediation. *In re Env't Ins. Declaratory Judgment Actions*, 149 N.J. 278, 292-93 (1997) (finding that the action for coverage relating to future harm constitutes action for specific performance). "A claim for insurance proceeds under a policy for a *past* loss, like the case here, takes the form [of] a regular contract action and not one of specific performance." *See Pieper v. USAA Cas. & Prop. Ins. Co.*, No. CV 23-2331 (MAS)(DEA), 2023 WL 7709086, at *7 (D.N.J. Nov. 15, 2023) (citing *Ward v. Merrimack Mut. Fire Ins. Co.*, 711 A.2d 394, 397 (N.J. Super. Ct. App. Div. 1998).

Here, Plaintiffs do not seek remuneration for any future costs, and thus, Plaintiffs are not entitled to the remedy of specific performance. Plaintiffs' request for specific performance is denied and Count 2 of Plaintiffs' Complaint is dismissed without prejudice.

### C. Plaintiffs' Breach of Contract Claim (Count 3)

Defendants argue that Plaintiffs fail to state a claim for breach of contract as coverage was properly denied due to Plaintiffs' failure to meet the explicit terms of the Berkshire Policy for claims arising from prior work. (ECF No. 10-1 at 7.)

In New Jersey, a valid breach of contract claim requires the existence of "a valid contract, defective performance by the defendant, and resulting damages." *22nd Century Techs., Inc. v. iLabs, Inc.*, No. 22-1830, 2023 WL 3409063, at *3 (3d Cir. May 12, 2023) (citing *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)). An insurance policy is a contract that will be enforced as written, provided its terms are clear, so that the expectations of the parties are fulfilled. *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) (citing *Kampf v. Franklin Life*

10

*Ins. Co.*, 161 A.2d 717 (N.J. 1960)). When considering the meaning of an insurance policy, courts interpret the language "according to its plain and ordinary meaning." *Id.* (citing *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255 (N.J. 1992)). If the terms are ambiguous, they are construed against the insurer to give effect to the insured's reasonable expectations. *Doto v. Russo*, 659 A.2d 1371, 1377 (N.J. 1995). For Plaintiffs' breach of contract claim to survive a motion to dismiss, the Court need only find that Plaintiffs' allegations were well-pleaded and plausibly give rise to an entitlement for relief. *See Iqbal*, 556 U.S. at 679. Plaintiffs have not met that burden here.

In their opposition, Plaintiffs appear to overlook the fact that the Berkshire Policy, as written, does not cover the underlying claim. Instead, Plaintiffs reiterate that the basis for their breach of contract claim stems from alleged representations made in pre-contractual communications. (ECF No. 16 at 9-10.) However, in making this argument, Plaintiffs overlook the requirement that a pleading "alleging breach of contract must, at a minimum, identify the contracts and provisions breached." *Liberty Mut. Fire Ins. Co. v. Reade Mfg. Co.*, No. 22-cv-0003, 2023 WL 3597675, at *4. As Plaintiffs have not identified a provision within the insurance contract *as written* that Defendants have breached, Defendants' motion to dismiss Plaintiffs' breach of contract claim will be granted and Count 3 will be dismissed without prejudice.

**D. Plaintiffs' Claim for Quantum Meruit/Unjust Enrichment (Count Five)**

To state a claim under a quasi-contract theory of unjust enrichment, a plaintiff must allege "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable." *Barnert Hosp. v. Horizon Healthcare Servs., Inc.*, No.06-3266, 2007 WL 1101443, at *6 (D.N.J. Apr. 11, 2007) (citing *Wanaque Borough Sewerage Auth. v. West Milford*, 677 A.2d 747, 752 (N.J. 1996)). "A claim of unjust enrichment will not stand when an express contract exists concerning the identical subject matter." *Spano v. JP Morgan*

11

*Chase Bank, NA*, 521 Fed. Appx. 66, 70 (3d Cir. 2013). Similarly, the theory of quantum meruit serves as an alternative to a breach of contract action, which warrants dismissal in the face of an existing enforceable agreement. *Alboyacian v. BP Prods. N. Am., Inc.*, No. CIV. 9-5143, 2011 WL 5873039, at *5 (D.N.J. Nov. 22, 2011) (dismissing Plaintiffs' claim of quantum meruit and holding that Plaintiffs' allegations were more appropriate for a breach of contract claim given the existence of a binding agreement governing the rights of the parties).

In *Estate of Gleiberman v. Hartford Life Ins. Co.*, 94 Fed. Appx. 944 (3d Cir. 2004), the Third Circuit approved the dismissal of unjust enrichment claims where, as here, a plaintiff also sought relief under a contract. In *Estate of Gleiberman*, the insurer issued a policy with a free-look provision, and the insured failed to exercise his right to cancel, hence "indicating an intent to be bound by the contract." 94 Fed. Appx. at 946-47. Because the policy was "valid and enforceable," the Third Circuit held, "the District Court correctly dismissed [on a 12(b)(6) motion] the claims for unjust enrichment and restitution." *Id.* at 947; *see also Davis v. Bankers Life & Cas. Co.,* No. CV153559ESJAD, 2016 WL 7668452, at *12 (D.N.J. Dec. 23, 2016).

Here, Plaintiffs' claim for quantum meruit and unjust enrichment must be dismissed as a matter of law because the Berkshire Policy is an express and enforceable contract governing the rights of the parties as to the specific conduct at the heart of this claim. Accordingly, Defendants' motion to dismiss Plaintiff's quantum meruit and unjust enrichment claim is granted and Count five is dismissed without prejudice.

### E. Plaintiffs' Bad Faith Claim (Count 6)

Next, Defendants move to dismiss Plaintiffs' claim for breach of covenant of good faith and fair dealing because it is duplicative of Plaintiffs' breach of contract claim and fails to plead

facts establishing the elements of bad faith[5] under New Jersey law. (*See* ECF No. 10-1 at 11-12.) The Court agrees.

To allege bad faith in the insurance context under New Jersey law, a plaintiff must allege facts to plausibly suggest that the insurer (1) did not have a "fairly debatable" reason for its failure to pay the claim, and (2) that the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim. *Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 Fed. App'x. 594, 599 (3d Cir. 2004) (citing *Pickett v. Lloyds*, 621 A.2d 445, 454 (N.J. 1993)). "If a claim is 'fairly debatable,' no liability in tort will arise." *Pickett*, 621 A.2d at 453.

In order to meet the "fairly debatable" standard, a plaintiff must establish as a matter of law a right to summary judgment on the substantive claim; a plaintiff who cannot do so is not entitled to assert a claim for bad faith—including at the motion to dismiss stage.[6] *See Fuscerello v. Combined Ins. Group, Ltd.*, Civ. No. 11-723, 2011 WL 4549152, at *5 (D.N.J. Sept. 29, 2011) (dismissing plaintiff's bad faith claim on a motion to dismiss where insurer's reason for refusing to pay presented disputed issues of material fact) (citing *Pickett*, 621 A.2d at 454); *Ketzner*, 118 Fed. App'x at 599 (stating that "if there are material issues of disputed fact . . . an insured cannot maintain a cause of action for bad faith.").

Plaintiffs argue that "[t]he 'fairly debatable' standard applicable to certain insurance claims is [] wholly irrelevant to Plaintiffs' bad faith claims in this matter." (*Id*.) They contend that their

---

[5] Plaintiffs assert a claim of "breach of covenant of good-faith [sic] and fair dealing." (*See* Compl. ¶¶ 76-79.) "Where, as here, an insurance contract is at issue," such a claim is synonymous with bad faith. *See, e.g.*, *Veyhl v. State Farm Fire & Cas. Co.*, No. 21-cv-10112, 2021 WL 6062304, at *3 (D.N.J. Dec. 22, 2021) (citing *Laing v. Am. Strategic Ins. Corp.*, 2014 WL 4953250, at *2 (D.N.J. Oct. 1, 2014)).

[6] To adequately plead a claim of bad faith, Plaintiffs must first establish that he is entitled to summary judgment on the underlying contract dispute in Count 3—that is, that Defendants' reasons for denying Plaintiffs' claim are not debatable as a matter of law. *See Pickett*, 621 A.2d at 453. Thus, the "fairly debatable" standard for bad faith claims requires only that the Court identify the existence of material issues of disputed fact in the underlying contract dispute. *Snowden v. Standard Ins. Co*., No. CV 23-2493 (RBK/EAP), 2024 WL 1154471, at *3 n.2 (D.N.J. Mar. 18, 2024).

13

bad faith claim should remain because Defendants knowingly issued an insurance policy with a three-month gap to deprive Plaintiffs of coverage for claims stemming from prior work, and such conduct is sufficient to establish bad faith. (ECF No. 16 at 13.) However, in making this argument, Plaintiffs concede that the Berkshire Policy conditioned coverage for claims arising from prior work and that they failed to meet at least one of those conditions, resulting in Defendants' denial of coverage. Therefore, Plaintiffs fail to establish as a matter of law that Defendants lacked a reasonable basis for denying the claim. *See Pickett*, 621 A.2d at 454; *see also Iqbal*, 556 U.S. at 678.

Moreover, under New Jersey law, "a plaintiff cannot maintain a claim for [bad faith] when . . . the cause of action arises out of the same conduct underlying the alleged breach of contract." *Petri v. Drive N.J. Ins. Co.*, No. 21-cv-20510, 2022 WL 4483437, at *6 (quoting *Hahn v. OnBoard LLC*, No. 09-03639, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009)); *see also Kare Distribution, Inc. v. Jam Labels & Cards LLC*, 09-00969, 2012 WL 266386, at *7 (D.N.J. Jan. 30, 2012); *Evonik Corp. v. Hercules Grp., Inc.,* No. CV167098JMVJBC, 2018 WL 5095991, at *9 (D.N.J. Oct. 18, 2018).

In this case, Plaintiffs have not pled that Defendants' conduct leading to their purported "breach of . . . duty" differed from the facts surrounding the alleged breach of contract. (*Compare* Compl. ¶¶ 76-79 *with* ¶¶ 60-64.) In fact, Plaintiffs freely admit that their bad faith claim stems from the "facts common to all counts," necessarily including the breach of contract claim. (*See* Compl. ¶ 76.) Therefore, the Court finds that Plaintiffs' bad faith claim is duplicative of their breach of contract claim. As such, Plaintiff cannot maintain a claim for bad faith, *see id.*; *Fuscerello*, 2011 WL 4549152, at *5. Defendants' motion to dismiss Plaintiffs' bad faith claim is granted and Count 6 will be dismissed without prejudice.

### F. Plaintiffs' Common Law Fraud Claim (Count 7)

"Under New Jersey law, a plaintiff alleging fraud must plead (i) a material representation of fact, (ii) knowledge on the speaker's part that the statement is false, (iii) an intent that the other rely, (iv) actual and reasonable reliance, and (v) resulting damages." *Davis,* 2016 WL 7668452, at *6 (citations omitted).

Similarly, to establish a claim for fraudulent inducement, a party must show the following: "(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012) (citing *Metex Mfg. Corp. v. Manson*, No. 05-2948, 2008 WL 877870, at *4 (D.N.J. Mar. 28, 2008)). Under New Jersey law, courts have "recognize[d] fraud in the inducement as an equitable remedy that may serve as the basis for rescission of a contract." *TekDoc Servs., LLC v. 3i-Infotech Inc.*, No. 09-6573, 2013 WL 2182565, at *21 (D.N.J. May 20, 2013); *Evonik Corp.,* 2018 WL 5095991, at *8. If fraudulent inducement is found, then the contract may be rescinded. *Tonglu Rising Sun Shoes Co. v. Nat. Nine (USA) Co.*, 2016 WL 7374543, at *3 (D.N.J. Dec. 20, 2016). As stated above, such pleadings are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Kare Distribution, Inc.,* 2009 WL 3297555, at *4. Fraud in the inducement can also provide an exception to the parol evidence rule. *Harker v. McKissock*, 12 N.J. 310, 323 (1953). However, parol evidence cannot be used to contradict express terms of the contract itself. *Atl. N. Airlines v. Schwimmer*, 12 N.J. 293, 302 (1953).

Here, Plaintiffs allege that Defendants repeatedly confirmed and otherwise represented to Plaintiffs that the new policy would cover claims arising out of Plaintiffs' work that predated the new policy on a claims-made basis. (Compl. ¶ 24.) Plaintiffs further allege that in reliance upon

15

Defendants' representations and assurances, Plaintiffs purchased the proposed policy from Defendants for an annual premium of $22,492.18. (Compl. ¶ 25.) Defendants, without notice to Plaintiffs, inserted contractual language requiring continuous prior coverage that would have covered a prior claim as a prerequisite for the claims made coverage under the Berkshire Policy. (Compl. ¶ 28.) Defendants then issued the Berkshire Policy, which had a three-month gap in professional liability coverage between the expiration of Plaintiffs' prior policy and the commencement date of the Berkshire Policy so as to preclude coverage for future professional liability claims arising out of Plaintiffs' prior work." (Compl. ¶¶ 29, 30.) In doing so, the Defendants intended to deprive Plaintiffs of any professional liability coverage for prior work and thereby collect annual premiums exceeding $22,000 without providing the core coverage for which Plaintiffs contracted. Plaintiffs further allege that Defendant Sharpee purportedly represented that claims stemming from prior work would be covered, without conditions. (*See* Compl. ¶¶ 80-85.) Plaintiffs contend that this clearly constitutes bad faith under New Jersey law.

Accepted as true and taken in a light most favorable to Plaintiffs, the Court finds that Plaintiffs' allegations satisfy Rule 9(b)'s heightened pleading requirement to "state with particularity the circumstances constituting fraud or mistake" with respect to their fraud claim against Defendants. Fed. R. Civ. P. 8(a)(2). This does not end the inquiry, however, whether Plaintiffs' fraud claim may proceed. The law is clear that "reasonable reliance . . . cannot be established in the face of clear contradictory language in an insurance policy." *Davis*, 2016 WL 7668452, at *6 (citations omitted).

"When an insured person receives an insurance policy, that person is 'under a duty to examine his insurance policies; if the terms disclosed by such an examination are inconsistent with his desires, he is required to notify the company of the inconsistencies and of his refusal to accept

16

the policy in the proffered condition.'" *Andrea v. Metro. Life Ins. Co.*, No. 00-CV-911, 2000 WL 35361960, at *3 (D.N.J. Aug. 14, 2000) (quoting *Martinez v. John Hancock Mut. Life Ins. Co.*, 145 N.J. Super. 301, 310 (App. Div. 1976); *see also Country Side Oil Co. v. Travelers Insurance Co.,* 928 F. Supp. 474 (D.N.J. 1995). Moreover, Plaintiffs have not pled that Defendants' conduct leading to the alleged fraud differed from the facts surrounding the alleged breach of contract. Further, Plaintiff is unable to set forth a valid fraud claim since the Berkshire Policy unequivocally conditions coverage for prior work on knowledge acquired during the policy period and continuous prior insurance, contradicting Plaintiffs' allegations. Thus, Defendants' motion to dismiss Plaintiffs' claim for common law fraud is granted and Count 7 is dismissed without prejudice.

### G. Plaintiffs' Breach of Fiduciary Duty Claim (Count 12)

Plaintiffs argue that Defendants held out Sharpee as a "Small Business Advisor" who would guide Plaintiffs through the process of obtaining replacement professional liability coverage and procure a policy that met Plaintiffs' unique needs. (ECF No. 16 at 23.) Plaintiffs claim that they trusted Defendants and relied on them to apply their premiums to a policy that covered them against claims arising out of Plaintiffs' prior work on a claims-made basis. (*Id*.) Plaintiffs' further claim that based upon the Defendants' course of conduct, representations, and the trust that they induced, Defendants created a special relationship and assumed a fiduciary duty to Plaintiffs. (*Id*.)

To plead a breach of fiduciary duty, a plaintiff must allege: "(1) a fiduciary relationship comprised of two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship, and (2) a violation of that trust." *Wiatt v. Winston & Strawn, LLP*, No. 10-6608, 2011 WL 2559567, at *9 (D.N.J. June 27, 2011). Notably, it is well established that an insurance agent owes a fiduciary duty to the insurance company, not to the insured. *Davis*, 2016 WL 7668452, at *9; *Weinisch v. Sawyer*, 587 A.2d 615, 618 (1991)

17

("An insurance agent owes a fiduciary duty to the insurance company . . . and acts not for the insured but for the insurer as its employee.").

Here, the Complaint alleges that Sharpee was, at all relevant times, Berkshire's employee.[7] (Compl. ¶ 5.) In such case, Sharpee owed a fiduciary duty only to Berkshire as his employer, not to Plaintiffs. *Weinisch v. Sawyer*, 587 A.2d 618; *In re Nw. Mut. Life Ins.*, 70 F. Supp. 2d 466, 489 (D.N.J. 1999) (holding that Plaintiffs' claim for breach of fiduciary duty lacked merit as the insurance agent did not owe a fiduciary duty to insurance applicant). Accordingly, Defendants' motion to dismiss Plaintiffs' claim for breach of a fiduciary duty will be granted and Count 12 will be dismissed without prejudice.

### H. Plaintiff's Demand for Punitive Damages

In New Jersey, breach of contract claims do not give rise to punitive damages unless the defendant also violates a separate and independent duty beyond the contract. *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153,1194 (3d Cir. 1993); *see also Sandler v. Lawn–A–Mat Chemical & Equipment Corp.,* 141 N.J. Super. 437, 358 A.2d 805, 812 (N.J. Super. App. Div. 1976) ("Where the essence of a cause of action is limited to a breach of such a contract, punitive damages are not appropriate regardless of the nature of the conduct constituting the breach"); *Pickett,* 621 A.2d at 455 ("absent egregious circumstances, no right to recover for . . . punitive damages exists for an insurer's allegedly wrongful refusal to pay a first-party claim").

Because Plaintiffs will be afforded the opportunity to amend certain Counts of the Complaint dismissed herein, and Defendants did not move to dismiss the Complaint in its entirety, a ruling that Plaintiffs are not entitled to punitive damages at this stage of the litigation would be

---

[7] Defendants cite to Plaintiffs' Complaint as to Sharpee's status (*see* ECF No. 10-1 at 23), however, Defendants neither confirm nor deny the allegation. Accordingly, Count 12 is dismissed without prejudice.

premature. Accordingly, Defendants' request to bar Plaintiffs' demand for punitive damages is denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss (ECF No. 10) pursuant to Rule 12(b)(6) is **GRANTED**, and Counts One (declaratory judgment); Two (specific performance); Counts Three (breach of contract); Five (quantum meruit); Six (breach of the covenant of good faith and fair dealing); Seven (common law fraud) and Twelve (breach of fiduciary duty) of Plaintiffs' Complaint of are **DISMISSED without prejudice**. Further, Defendants' request to bar Plaintiffs' demand for punitive damages is **DENIED**. An appropriate Form of Order accompanies this Opinion.

**DATED:** March 29, 2025

JULIEN XAVIER NEALS
**United States District Judge**