**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| VINCENT CUSUMANO ARCHITECT P.C. and VINCENT CUSUMANO, <br><br> Plaintiffs, <br><br> v. <br><br> BERKSHIRE HATHAWAY DIRECT INSURANCE COMPANY d/b/a THREE BY BERKSHIRE HATHAWAY, *et al.*, <br><br> Defendants. | Civil Action No. 23-22970 (JXN)(JSA) <br><br> **OPINION** |

**NEALS**, District Judge

Vincent Cusumano ("Cusumano"), an architect, bought a professional liability insurance policy ("Berkshire Policy" or "Policy") for himself and his firm, Vincent Cusumano Architect P.C. ("VCA") (with Cusumano, "Plaintiffs"). The Berkshire Policy covered claims arising from Plaintiffs' prior work—but only if Plaintiffs previously had continuous insurance coverage. Plaintiffs were uninsured for three months before purchasing the Berkshire Policy.

After a retail company filed suit against Plaintiffs for their prior work, Plaintiffs sought coverage from the Berkshire Policy. The insurer, Berkshire Hathaway Direct Insurance Company d/b/a Three by Berkshire Hathaway ("Berkshire"), refused, citing the Policy's continuous coverage provision. Plaintiffs sued Berkshire and Berkshire agent Todd Sharpee ("Sharpee") (collectively, "Defendants"), alleging that Berkshire breached the Policy, and that Sharpee misrepresented the scope of coverage.

Before the Court is Defendants' motion to dismiss the Amended Complaint or for judgment on the pleadings. (ECF No. 79.) Plaintiffs opposed (ECF No. 80), and Defendants replied

(ECF No. 81). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure[1] 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion to dismiss or for judgment on the pleadings (ECF No. 79) is **GRANTED**.

## I.    BACKGROUND

### A.    Plaintiffs Obtain Berkshire Insurance After Their Prior Policy Lapses

Cusumano, an architect, owns VCA, an architecture company. (Am. Compl. ¶¶ 11–12, ECF No. 55.) Plaintiffs work on "large scale projects including retail stores, shopping malls, and public buildings." (*Id.* ¶ 13.) From November 2020 to November 2021, Plaintiffs held a professional liability insurance policy with Hanover Insurance Group ("Hanover Policy"). (*Id.* ¶ 17.) In November 2021, the Hanover Policy lapsed. (*Id.* ¶ 21.)

Several months later, in January 2022, Plaintiffs applied for a professional liability insurance policy with Berkshire, an insurance company. (*Id.* ¶ 22.) Sharpee, a Berkshire insurance agent, called Plaintiffs to follow up on the application. (*See* Am. Compl. ¶¶ 31–37; Defs.' Ex. C ("Jan. 21 2022 Call Tr."), ECF No. 79-6.[2]) Mary Ellen Cusumano ("Mary Ellen") answered the

---

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

[2] "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). "However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'" *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). The "critical" question is "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.* (quoting *In re Burlington Coat Factory*, 114 F.3d at 1426). "When allegations contained in a complaint are contradicted by the document it cites, the document controls." *Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Assocs., Inc.*, 859 F. Supp. 2d 706, 714 (D.N.J. 2012) (quoting *In re PDI Sec. Litig.*, No. 02-211, 2005 WL 2009892, at *21 (D.N.J. Aug. 17, 2005)).

Here, Plaintiffs assert promissory estoppel, fraud, and misrepresentation claims based on Sharpee's phone and email conversations with Plaintiffs. The Court, therefore, may consider the transcripts and other records of those conversations. *Samra Plastic & Reconstructive Surgery v. United Healthcare Ins. Co.*, 768 F. Supp. 3d 661, 672 (D.N.J. 2025) (considering transcript on motion to dismiss).

phone. (*See* Jan 21, 2022 Call Tr.) During that call, Sharpee offered Plaintiffs a three-page long policy, which he represented was "actually written in regular English, so you can understand, and you know what you're being covered for and know what's being excluded. Not written in insurance jargon, it's not written in legalese." (*Id.* at 4:21–5:5.) Sharpee then emailed Plaintiffs a link to the policy. (*See* Defs.' Ex. D at *2,[3] ECF No. 79-7.)

In a subsequent phone call, Mary Ellen noted Plaintiffs "ha[d] to make a determination about the cost" of the policy (*see* Defs.' Ex. E ("Jan. 28, 2022 Call Tr.") 2:17–18, ECF No. 79-8), and expressed Plaintiffs' need to "isolate" Berkshire's professional liability premium "and compare the cost . . . to make sure that it's competitive." (*Id.* at 5:17–21). Mary Ellen stated:

> I just want to confirm that price. And then that's it. I think then we just have to compare the numbers, and the thing that I don't like about my existing -- the existing policy that I have in the place, that every time we go to renew it, they ask you for more and more money, and they ask you for more details.

(*Id.* at 7:12–18.)

On February 14, 2022, Cusumano then emailed Sharpee a copy of the Hanover Policy's declarations page, albeit with the policy number, effective date, and expiration date redacted. (*See* Defs.' Ex. D at *13.) Cusumano's email stated:

> Attached is the Declaration page from what was our firm's Professional Liability coverage insurance up to last month. Can you please confirm the coverage "Three" is proposing is equal? After a quick review the primary difference I noted is that we are required by our clients to have $2,000,000 per claim and $3,000,000 aggregate, whereas the proposal you submitted sites $1,000,000 per claim and $3,000,000 aggregate. Also your proposal seems to be missing the page specifically for the Professional Liability; Limits of Liability, Deductibles and for Supplemental Coverage. Please review the attached making your proposal match the proposal I have attached so we can do a side-by-side comparison. I will call you this afternoon to discuss the above.

(*Id.* at *6.) Sharpee replied

---

[3] Pincites preceded by an asterisk (*) use ECF pagination.

> I can raise the limit for the liability to $2,000,000 per occurrence and $5,000,000 aggregate. Our policy has a $1000 deductible, I can not raise it to $5000 without underwriting approval. The policy wording showing that professional liability is in our policy which can be found here https://threeinsurance.com/the-policy. Anything not specifically excluded by the policy (exclusions are about ¾ of a page on the second to last page I believe) is included. That means your supplemental coverages and professional liability that you had listed should all be covered under Business Liability at $2M/$5M. Please let me know if you have any questions or if you would like to get the policy started. I can be reached at 800-507-4495 until 9pm eastern time or simply respond back to this email.

(*Id.* at \*5.)

Two days later, Sharpee and Cusumano spoke on the phone. (*See* Defs.' Ex. F ("Feb. 16, 2022 Call Tr."), ECF No. 79-9.) During that conversation, Cusumano asked Sharpee questions about different provisions of proposed policy. (*Id.*) Specifically, Cusumano noted:

> Now it says if your business first learns about a claim during this policy and previously had continuous coverage that would have covered the claim, we will cover that claim even though it is not the result of an occurrence during this policy. Okay. Got it. Okay.

(*Id.* at 6:8–13.) Cusumano then asked:

> So the question is, is there any way we could save money on any other aspect of this policy, like workman's comp or property insurance? I don't know how much of this policy is attributable to the errors of omission and how much is attributable to the other things that it covers. So . . . . that's why I'm asking this question.

(*Id.* at 7:2–7.)

On February 23, 2022, Cusumano emailed Sharpee that he "want[ed] to get our policy started." (Defs.' Ex. D at \*4.) Berkshire issued Plaintiffs a professional liability insurance policy ("Berkshire Policy") the next day. (*See* Defs.' Ex. G ("Berkshire Policy"), ECF No. 79-10.)

The Berkshire Policy stated:

> **The coverage we provide your business under this policy:** This policy only covers your business for loss caused by occurrences during the policy period. An "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions that begin during the policy period. "Occurrence" also includes an error or omission by your business. Should

4

any part of this policy, on its effective date, conflict with the laws of the state where your business is based, then that part of this policy will be automatically amended to meet the minimum requirements of those laws.

(*Id.* at *4.) The Berkshire Policy then explained:

**For your business' liability to others:** We cover your business for amounts it is legally required to pay others as the result of an occurrence. We will provide legal counsel to defend any such claims. Employees of your business acting on its behalf and Additional Insureds working with your business are also covered the same way your business would be. Additional Insured automatically includes any required Additional Insured in a contract made before starting work.

We also cover (i) claims of negligence, errors, or omissions in providing professional services, and (ii) claims against directors or officers of your business arising from their actions taken on behalf of your business. For these kinds of claims, if your business first learns about the claim during this policy, and previously had continuous insurance coverage that would have covered the claim, we will cover that claim even though it is not the result of an occurrence during this policy.

(*Id.*) The Berkshire Policy continued:

We do not cover any occurrence(s) that start or take place outside the policy period on the Summary. To be covered by any of this policy's Coverages, the damage, liability, or injury must be caused by or arise from an occurrence during the policy period on the Summary. For any claims that we do not cover, we will not provide legal counsel to defend those claims.

(*Id.* at *5.)

**B.      Berkshire Refuses to Cover a Lawsuit Against Plaintiffs**

On July 31, 2023, Plaintiffs were sued in New York state court for breach of contract, professional malpractice, and unjust enrichment. (*See* Defs.' Ex. H ("N.Y. Compl."), ECF No. 79-11.) The lawsuit, titled *A.J. Richard & Sons, Inc. v. Vincent Cusumano Architect PC* ("New York Action"), arose after a retail company hired Plaintiffs to redesign and renovate a storefront in Brooklyn ("Project"). (*Id.* ¶¶ 1–5.) The retail company engaged Plaintiffs to design, plan and supervise the Project in 2017. (*Id.* ¶¶ 45–46.) Plaintiffs had three years to complete their work. (*Id.* ¶ 49.) But, according to the retail company, the Project stretched well into 2022. (*Id.* ¶ 8.) The

retail company asserted that Plaintiffs mismanaged the Project, did not properly evaluate the concrete slab at the base of the storefront, and failed to supervise or inspect work being done. (*See id.* ¶¶ 75–114.) The retail company alleged it "became aware of the magnitude of [Plaintiffs'] failure to properly manage the [Project]" in March 2021, when the retail company's senior operations director became directly involved in supervising the Project. (*Id.* ¶¶ 115–20.)

Plaintiffs submitted a claim for Berkshire to defend against the New York Action, but Berkshire refused, explaining:

> The policy does provide coverage for errors and omissions committed by the insured that involve an occurrence before the policy period so long as the insured first learned of the claim during the policy period and had continuous coverage that would have covered the claim dating back to the occurrence date. Here, Vincent Cusumano Architect P.C. had professional liability coverage until November of 2021, followed by a gap in coverage until this policy's inception date of February 24, 2022. Due to the gap in coverage, the policy condition of continuous coverage has not been met and there is no coverage for an occurrence that begins before the policy inception date.

(Am. Compl. ¶ 79.)

### C. Plaintiffs File This Lawsuit, Which the Court Partially Dismisses

Plaintiffs sued Defendants in New Jersey Superior Court on October 31, 2023. (*See* Compl., ECF No. 1-1.) The Complaint included claims for declaratory judgment; specific performance; breach of contract; promissory estoppel; quantum meruit/unjust enrichment; breach of the implied covenant of good faith and fair dealing; fraud; violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1; negligent/intentional misrepresentation; professional

negligence/malpractice; ordinary negligence; breach of fiduciary duty; and contract reformation. (*Id.*)

Defendants timely removed to this Court[4] (*See* Notice of Removal, ECF No. 1-1), and later, moved to dismiss Plaintiffs' claims for declaratory judgment, specific performance, breach of contract, quantum meruit, breach of covenant of good faith and fair dealing, common law fraud, and breach of fiduciary duty. (*See* First Mot. to Dismiss, ECF No. 10).

The Court granted Defendants' partial motion to dismiss. (*See* Op., ECF No. 47; Order, ECF No. 48.) The Court dismissed Plaintiffs' declaratory judgment claim because an actual controversy had already occurred, and the claim was duplicative of Plaintiffs' breach of contract cause of action. (Op. at 7–9.) The Court dismissed Plaintiffs' request for specific performance because Plaintiffs did not seek renumeration for future costs. (*Id.* at 9–10.) The Court dismissed Plaintiffs' breach of contract claim because the "Berkshire Policy, as written, does not cover the underlying claim," and "Plaintiffs have not identified a provision within the insurance contract as written that Defendants have breached." (*Id.* at 10–11.) The Court dismissed Plaintiffs' quantum meruit claim because Plaintiffs already sought relief under a written contract. (*Id.* at 11–12.) The Court dismissed Plaintiffs' bad faith claim as duplicative of Plaintiffs' breach of contract claim and lacking enough factual matter to show an entitlement to relief. (*Id.* at 12–14.) The Court dismissed Plaintiffs' fraud claim because Plaintiffs could not establish reasonable reliance in the face of the Berkshire Policy's plain and contrary language. (*Id.* at 15–17.) And the Court dismissed

---

[4] Here, the Court notes it has subject matter jurisdiction under 28 U.S.C. § 1332(a). Under § 1332(a), federal courts may hear matters between citizens of different states where the amount in controversy exceeds $75,000. Cusumano is a New Jersey resident and VCA is a New Jersey corporation. (*See* Compl. ¶¶ 1–2.) Berkshire is a Nebraska corporation and Sharpee is a Nebraska resident. (*See* Diversity Disclosure Statement, ECF No. 3.) Given the scope of the underlying insurance claim at issue, the Court concludes that the amount in controversy is likely to exceed $75,000.

Plaintiffs' fiduciary duty claim because Sharpee did not owe a fiduciary duty to Plaintiffs. (*Id.* at 17–18.) Dismissal was without prejudice. (*Id.* at 19.)

### D.    Plaintiffs File an Amended Complaint; Defendants Move to Dismiss

Plaintiffs filed an Amended Complaint on April 30, 2025. (*See* Am. Compl.) The Amended Complaint includes claims for: declaratory relief ("Count One"); breach of contract ("Count Two"); promissory estoppel ("Count Three"); quantum meruit/unjust enrichment ("Count Four"); breach of the covenant of good faith and fair dealing ("Count Five"); fraud ("Count Six"); violation of the NJCFA ("Count Seven"); negligent/intentional misrepresentation ("Count Eight"); professional negligence/malpractice ("Count Nine"); ordinary negligence ("Count Ten"); breach of fiduciary duty ("Count Eleven"); and contract reformation ("Count Twelve"). (*See generally id.*)

Defendants move to dismiss the Amended Complaint in its entirety under Rule 12(b)(6), or in the alternative, move for judgment on the pleadings under Rule 12(c). (*See* Second Mot. to Dismiss, ECF No. 79.) Plaintiffs opposed (Pls.' Opp'n, ECF No. 80), and Defendants replied (Defs.' Reply, ECF No. 81).

## II.    <u>LEGAL STANDARD</u>

Rule 12(c) allows parties to move for judgment on the pleadings "[a]fter the pleadings are closed--but early enough not to delay trial." A Rule 12(c) motion "is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Revell v. Port Auth. of NY, NJ*, 598 F.3d 128, 134 (3d Cir. 2010)).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must have "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

8

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court conducts a three-step inquiry in evaluating a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the Court identifies "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the Court accepts all plaintiff's well-pleaded factual allegations as true and "construe[s] the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman*, 873 F.3d at 417–18 (noting that, on a 12(c) motion, "a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party."). But the Court disregards "legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). Third, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

## III.    DISCUSSION

### A.    Declaratory Judgment (Count One)

Plaintiffs seek a declaratory judgment under the New Jersey and federal Declaratory Judgment Acts, N.J.S.A. 2A:16-50, *et seq.* and 28 U.S.C. § 2201(a). Plaintiffs argue that Defendants "represented that the Berkshire Policy, in part, provided professional liability coverage for new claims arising out of Plaintiffs' prior work" and "specifically agreed, in part, to provide professional liability insurance on an occurrence basis for new claims arising out of alleged errors or omissions occurring during the Berkshire Policy period." (Am. Compl. ¶¶ 102–03.) And

Plaintiffs claim that the "Berkshire Policy does not provide that all errors or omissions relating to a single project shall constitute a single occurrence." (*Id.* ¶ 104.) Therefore, Plaintiffs argue a judicial determination is necessary to interpret "to interpret the Berkshire Policy in accordance with Defendants' representations and/or declare that the Berkshire Policy provides coverage for the errors and omissions that the New York Action alleges occurred during the Berkshire Policy period." (*Id.* ¶ 106.)

Defendants move to dismiss Count One, arguing it still duplicates Plaintiffs' breach of contract claim and concerns an existing controversy. The Court agrees.

A federal court "sitting in diversity will treat a prayer for declaratory judgment brought under state law" as though it had been filed under the federal Declaratory Judgment Act ("DJA"). *Vincent Cusumano Architect P.C. v. Berkshire Hathaway Direct Ins. Co.* ("*Cusumano I*"), No. 23-22970, 2025 WL 957699, at *3 (D.N.J. Mar. 29, 2025) (quoting *Tumi, Inc. v. Factory Mut. Ins. Co.*, No. 21-2752, 2021 WL 4170051, at *1 n.3 (D.N.J. Sept. 14, 2021)). The DJA allows federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Declaratory judgment is an appropriate remedy when it will terminate the controversy giving rise to the proceeding." *Cusumano I*, 2025 WL 957699, at *3 (quoting *Greg Prosmushkin, P.C. v. Hanover Ins. Grp.*, 479 F. Supp. 3d 143, 147 (E.D. Pa. 2020)). District courts, however, have "unique and substantial discretion" in deciding "whether to exercise jurisdiction in declaratory judgment actions." *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 196 (3d Cir. 2021) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995)). "In other words, a district court may abstain from hearing a declaratory judgment action that is properly within the court's subject matter jurisdiction." *Id.*

10

Declaratory judgments must "have utility," *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1155 (3d Cir. 1995), and offer "significant 'practical help in ending the controversy,'" *Step-Saver Data Sys. v. Wyse Tech.*, 912 F.2d 643, 650 (3d Cir. 1990) (citation omitted). The Third Circuit, therefore, instructs courts to "decline to exercise [their] discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation." *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000).

Declaratory judgment serves no purpose if it shares a "complete identity of factual and legal issues with another claim being adjudicated by the parties." *Kousis v. Fid. & Guar. Ins. Underwriters, Inc.*, No. 22-6530, 2023 WL 6141237, at *6 (D.N.J. Sept. 20, 2023) (citation omitted). If the plaintiff prevails on the other claim, "then an *actual judgment,* rather than a mere declaration, would be entered stating that" defendant is liable and entitling plaintiff to relief. *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009). Accordingly, "[c]ourts in this District generally decline to grant declaratory relief when the claim for declaratory judgment is entirely duplicative of another claim in the cause of action." *Cusumano I*, 2025 WL 957699, at *4 (collecting cases).

Moreover, declaratory judgments "are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct." *Andela v. Admin. Off. of U.S. Cts.*, 569 F. App'x 80, 83 (3d Cir. 2014). They are "not meant simply to proclaim that one party is liable to another." *Id.* Likewise, declaratory judgment "is inappropriate solely to adjudicate past conduct." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006).

As before, Plaintiffs' declaratory judgment claim is identical to all their other claims. Plaintiffs' breach of contract claim alleges the Berkshire Policy required Berkshire to cover the New York Action, which Berkshire failed to do. Plaintiffs' promissory estoppel claim alleges that

Plaintiffs relied on Sharpee's representations that Berkshire would cover past occurrences. Plaintiffs' declaratory judgment claim seeks a declaration of coverage based on the Berkshire Policy and on Defendants' representations. In other words, the factual and legal issues in Plaintiffs' claims are identical.

Plaintiffs argue their claims are not duplicative because the declaratory judgment claim seeks a declaration of coverage while the breach of contract claim seeks money damages. (Pls.' Opp'n at 15.) This is unpersuasive. The question is whether the *issues* are identical, not the *relief*. Here, the issues underlying Count One and the remaining causes of action are identical.

Moreover, an actual controversy already exists. An insurance "claim has been made, coverage has been denied, and the insured has sued based on that denial." *Kousis*, 2023 WL 6141237, at *7. A declaratory judgment would simply proclaim that Defendants liable to Plaintiffs for Defendants' denial of coverage. That declaration "would be superfluous." *Id.*

Count One is therefore **dismissed *with prejudice*.**[5]

### B.      Breach of Contract (Count Two)

To state a claim for breach of contract in New Jersey, the plaintiff must show: (1) "the parties entered into a contract containing certain terms"; (2) the plaintiff "did what the contract required them to do"; (3) the "defendants did not do what the contract required them to do"; and (4) the "defendants' breach, or failure to do what the contract required, caused a loss" to the plaintiff. *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016) (cleaned up). "An insurance policy is a contract that will be enforced as written, provided its terms are clear, so that the expectations

---

[5] "[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236 (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)). An amendment is futile if it "advances a claim that is legally insufficient on its face." *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000). Because Plaintiffs' declaratory judgment claim is duplicative and adjudicates past conduct, i.e., the denial of Plaintiffs' insurance claim, Count One is legally insufficient on its face.

of the parties are fulfilled." *Cusumano I*, 2025 WL 957699, at *5 (citing *Flomerfelt v. Cardiello*, 202 N.J. 432, 441 (2010)).

Courts interpret an insurance policy "according to its plain and ordinary meaning." *Flomerfelt*, 202 N.J. at 441 (quoting *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 175 (1992)). "If the language is clear, that is the end of the inquiry." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008). The Court will not strain clear language to impose liability "or write a better policy for the insured than the one purchased." *Id.* An ambiguous term is "susceptible to at least two reasonable alternative interpretations." *Id.* Ambiguous terms "are construed against the insurer and in favor of the insured, in order to give effect to the insured's reasonable expectations." *Flomerfelt*, 202 N.J. at 441. But courts will not torture the language of a contract to create ambiguity where none exists. *Cassilli v. Soussou*, 408 N.J. Super. 147 (App. Div. 2009).

The Court's inquiry begins and ends with the plain language of the Berkshire Policy. The Berkshire Policy "only covers . . . loss caused by occurrences during the policy period." (Berkshire Policy at *4.) An occurrence "means an accident, including continuous or repeated exposure to substantially the same general harmful conditions that begin during the policy period," and "includes an error or omission by [the insured's] business." (*Id.*) The Berkshire Policy also covers

> claims of negligence, errors, or omissions in providing professional services . . . . For these kinds of claims, if your business first learns about the claim during this policy, and previously had continuous insurance coverage that would have covered the claim, we will cover that claim even though it is not the result of an occurrence during this policy.

(*Id.*) The Court, therefore, considers whether the New York Action was, itself, an occurrence; and if not, whether it falls within the Berkshire Policy's coverage for claims arising from prior work.

13

### i.    *The New York Action Was Not an Occurrence During the Policy Period*

An occurrence is "logically distinct from the injuries or claims which later take place." *Doria v. Ins. Co. of N. Am.*, 210 N.J. Super. 67, 72 (App. Div. 1986). The word "clearly focuses on the underlying circumstances of the event which gave rise to the claim of injuries rather than on the injury itself." *Id.* Therefore, an "occurrence is determined by the cause or causes of the resulting injury." *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61 (3d Cir. 1982). "[F]or the purpose of counting the number of occurrences, the term must be construed from the point of view of the cause or causes of the accident rather than its effect." *Doria*, 210 N.J. Super. at 72–73. If there is only "one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage," there is only one occurrence. *Appalachian Ins. Co.*, 676 F.2d at 61. "'[T]he fact there were multiple injuries and that they were of different magnitudes and that injuries extended over a period of time' does not mean there were multiple occurrences." *Real Legacy Assurance Co. v. Afif*, 409 F. App'x 558, 561 (3d Cir. 2011) (quoting *Appalachian Ins. Co.*, 676 F.2d at 61).

As both parties note, New Jersey uses the "last pull of the trigger" theory to determine when an occurrence takes place in cases involving progressive property damage. *See, e.g.*, *Air Master & Cooling, Inc. v. Selective Ins. Co. of Am.*, 452 N.J. Super. 35, 38 (App. Div. 2017). "The 'last pull' of that trigger—for purposes of ascertaining the temporal end point of a covered occurrence—happens when the essential nature and scope of the property damage first becomes known, or when one would have sufficient reason to know of it." *Id.*

Here, the retail company alleged it first "became aware of the magnitude of [Plaintiffs'] failure to properly manage the [Project]" in March 2021. (N.Y. Compl. ¶¶ 115–20.) Accordingly, the "last pull" of the trigger in the events underlying the New York Action—i.e., when the retail

14

company knew the "essential nature and scope" of Plaintiffs' alleged mismanagement—occurred before the Berkshire Policy took effect.[6] The alleged errors and omissions underlying the New York Action, therefore, are not an "occurrence" within the Berkshire Policy.[7]

### ii.    The New York Action is Not a Covered Claim Arising From Prior Work

The Berkshire Policy covers a professional negligence claim arising from prior work only if (1) the insured "first learns about the claim during" the Berkshire Policy; and (2) "the insured previously had continuous insurance coverage that would have covered the claim." Here, the New York Action arose from Plaintiffs' prior work. And Plaintiffs first learned about the New York Action during the Berkshire Policy period. But Plaintiffs did not previously maintain continuous insurance coverage that would have covered the New York Action. Therefore, the Berkshire Policy does not cover the New York Action.[8]

---

[6] Plaintiffs cursorily argue the "last pull" of the trigger had not yet occurred in March 2021 because the retail company had not "performed testing, identified specific damages, or determined that Plaintiffs had allegedly been negligent." (Pls.' Opp'n at 20–21.) This is unpersuasive. The "last pull" occurs when the "*essential* nature and scope" of the damage first becomes known, not when the *full* nature and scope become known. *Air Master*, 452 N.J. Super. at 38 (emphasis added). And, to be sure, more damages occurred after March 2021. The retail company alleges that Plaintiffs failed to process change orders or adequately test the concrete slab in 2022. But the retail company expressly alleges those damages occurred due to Plaintiffs' mismanagement, the essential nature and scope of which first became known in March 2021.

[7] Plaintiffs briefly contend that the word "occurrence" is ambiguous. Plaintiffs observe that, within the definition of "occurrence," an "accident" includes "continuous or repeated exposure to . . . harmful conditions"; an "error or omission" does not. Therefore, Plaintiffs conclude that "errors or omissions" need not be "continuous or repeated," and each error or omission can comprise an "occurrence."

The Court disagrees. The Berkshire Policy merely notes that business "errors or omissions" and the "continuous and repeated exposure to . . . harmful conditions" are both occurrences. It does not rewrite the well-established rules that an injury's cause governs an occurrence, and that "one proximate, uninterrupted, and continuing cause" yields only one occurrence. *Appalachian Ins. Co.*, 676 F.2d at 61. Correspondingly, if multiple business errors or omissions form one proximate cause for all complained-of injuries, there is only one occurrence within the Berkshire Policy.

[8] Plaintiffs claim that the phrase "continuous insurance coverage" is ambiguous because it does not set forth the time during which Plaintiffs needed continuous coverage. This argument falls flat.

Words like "continuous" are "subjective to some extent, as many words are." *Smith v. State Farm Fire & Cas. Co.*, No. 19-10319, 2020 WL 6938432, at *5 (D.N.J. Nov. 25, 2020). But imprecision is not ambiguity. *Id.* A word in an insurance policy is ambiguous "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 224 N.J. 189, 200 (2016). Continuous is not one of those words. It means "marked by uninterrupted extension in space, time, or sequence." *Continuous*, Merriam-Webster Dictionary, https://www.merriam-

Because the Berkshire Policy "unequivocally conditions coverage for prior work on knowledge acquired during the policy period and continuous prior insurance," and Plaintiffs did not have continuous prior insurance, Count Two is **dismissed *with prejudice*.**[9] *Cusumano I*, 2025 WL 957699, at \*9.

### C.    Promissory Estoppel (Count Three) and Quantum Meruit (Count Four)

Promissory estoppel requires "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Goldfarb v. Solimine*, 245 N.J. 326, 339–40 (2021) (quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 194 N.J. 223, 253 (2008)). Promissory estoppel is a quasi-contractual "stop-gap where no valid contract exists to enforce a party's promise." *Kiss Elec., LLC v. Waterworld Fiberglass Pools, N.E., Inc.*, No. 14-3281, 2015 WL 1346240, at \*5 (D.N.J. Mar. 25, 2015). Quantum meruit is another quasi-contractual theory of recovery, which requires the plaintiff to show "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Starkey, Kelly, Blaney & White v. Est. of Nicolaysen*, 172 N.J. 60, 68 (2002).

Both of Plaintiff's quasi-contractual theories fail because the Berkshire Policy fully defines Plaintiffs' rights to coverage. An "express contract excludes an implied one." *Moser v. Milner Hotels*, 6 N.J. 278, 280 (1951). Therefore, under New Jersey law, quasi-contractual liability cannot arise "if an express contract exists concerning the identical matter." *Zydus Worldwide DMCC v.*

---

webster.com/dictionary/continuous (last visited June 22, 2026). Within the plain meaning of the Berkshire Policy, Plaintiffs must have had uninterrupted insurance coverage that would have covered the claim. They did not. Accordingly, the Court declines to torture the word "continuous" into ambiguity.

[9] The Court dismisses Plaintiffs' breach of contract claim with prejudice because Plaintiffs have twice failed to identify a provision of the Berkshire Policy that Defendants breached. The Court thus concludes that further amendment is likely futile. *Phillips*, 515 F.3d at 236.

*Teva API Inc.*, 461 F. Supp. 3d 119, 140–41 (D.N.J. 2020) (quoting *Freightmaster USA, LLC v. Fedex, Inc.*, No. 14-3229, 2015 WL 1472665, at *6 (D.N.J. Mar. 31, 2015)); *see also Hill v. Com. Bancorp, Inc.*, No. 09-3685, 2012 WL 694639, at *14 (D.N.J. Mar. 1, 2012), *aff'd sub nom. Hill v. TD Bank, NA*, 586 F. App'x 874 (3d Cir. 2014) (holding a party "cannot prevail on both a breach of contract and promissory estoppel theory for the same conduct, since promissory estoppel by its definition assumes that a contract supported by consideration has not been formed."); *N.Y.-Conn. Dev. Corp. v. Blinds-To-Go (U.S.) Inc.*, 449 N.J. Super. 542, 556 (App. Div. 2017) ("[T]he existence of an express contract excludes the awarding of relief regarding the same subject matter based on quantum meruit." (citation omitted)).

As the Court previously found, the "Berkshire Policy is an express and enforceable contract governing the rights of the parties as to the specific conduct at the heart of this claim." *Cusumano I*, 2025 WL 957699, at *6. Moreover, the injury Plaintiffs allege is "indistinguishable from a breach of contract." *Zydus*, 461 F. Supp. 3d at 141. Because an express contract covers the same subject matter as Plaintiffs' quasi-contract claims, Counts Three and Four are **dismissed *with prejudice***.[10] [11]

---

[10] Plaintiffs argue they may plead both breach of contract and quasi-contractual claims in the alternative. Not here. "Although plaintiffs may plead in the alternative under Rule 8(d)(2), they cannot assert both breach of contract and promissory estoppel claims unless the contract is disputed or the matter at issue is beyond that covered in the contract." *Gujja v. Inpatient Servs. of N.J., P.C.*, No. 21-19416, 2022 WL 2834998, at *3 (D.N.J. July 20, 2022). The validity of the Berkshire Policy is not disputed, nor is the matter at issue beyond the Berkshire Policy.

[11] The Court also notes that, while Plaintiffs claim they requested insurance for claims arising out of prior work, Plaintiffs do not expressly allege they asked for coverage during the period where they were uninsured. At most, Plaintiffs argue that:

> By emailing Defendants and providing a copy of the Hanover Policy declaration pages, Plaintiffs advised Defendants that Plaintiffs' most recent policy of professional liability insurance had expired, that Plaintiffs did not presently possess professional liability coverage, and requested that Defendants make sure that the contemplated policy provided the same professional liability coverage as the Hanover Policy, including nose coverage with an unlimited retroactive date.

(Am. Compl. ¶ 45.) But Plaintiffs sent Sharpee a copy of the Hanover Policy declarations page with the expiration date *redacted*. (*See* Defs.' Ex. D at *13.) And Cusumano's vague reference to the Hanover Policy as "what was our firm's Professional Liability coverage insurance up to last month" does not clearly indicate that Plaintiffs had, at that point, been uninsured for several months. (Am. Compl. ¶ 42.)

### D.     Bad Faith (Count Five)

Every New Jersey insurance contract has an implied covenant of good faith and fair dealing. *Wadeer v. N.J. Mfrs. Ins. Co.*, 220 N.J. 591, 604 (2015) (quoting *Wood v. N.J. Mfrs. Ins. Co.*, 206 N.J. 562, 577 (2011)). It follows that an insurance company "owes a duty of good faith to its insured in processing a first-party claim." *Id.* (quoting *Pickett v. Lloyd's*, 131 N.J. 457, 467 (1993)). "The good faith obligations of an insurer to its insured run deeper than those in a typical commercial contract." *Badiali v. N.J. Mfrs. Ins. Grp.*, 220 N.J. 544, 554 (2015).

But an insurer's bad faith "cannot be established through simple negligence." *Id.* Rather, to state a claim for bad faith, the plaintiff must show (1) the insurer had no "reasonable basis for denying benefits of the policy"; and (2) the insurer knew or recklessly disregarded that it had no reasonable basis for denying benefits. *Wadeer*, 220 N.J. at 604. Correspondingly, an "insured who alleges bad faith by the insurer must establish the merits of his or her claim for benefits." *Wacker-Ciocco v. Gov't Emps. Ins. Co.*, 439 N.J. Super. 603, 611 (App. Div. 2015). "If there is a valid question of coverage, i.e., the claim is 'fairly debatable,' the insurer bears no liability for bad faith." *Id.* (quoting *Pickett*, 131 N.J. at 473–74). To meet the "fairly debatable" standard, "a plaintiff must establish as a matter of law a right to summary judgment on the substantive claim; a plaintiff who cannot do so is not entitled to assert a claim for bad faith—including at the motion to dismiss stage." *Cusumano I*, 2025 WL 957699, at *7. "In other words, if there are material issues of disputed fact . . . , an insured cannot maintain a cause of action for bad faith." *Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 F. App'x 594, 599 (3d Cir. 2004).

As before, the Court's inquiry begins and ends with the plain language of the Berkshire Policy. The Berkshire Policy insures claims arising from prior work only if (1) the insured "first learns about the claim during" the Berkshire Policy; and (2) "the insured previously had continuous

18

insurance coverage that would have covered the claim." Because Plaintiffs did not previously have continuous insurance coverage, Berkshire denied Plaintiffs' claim under the plain language of the Policy. Plaintiffs, therefore, could not prevail on their claim for benefits as a matter of law. And so, Plaintiffs' bad faith claim cannot succeed.

Moreover, as the Court previously noted, a plaintiff cannot maintain a bad faith claim against an insurer when "the cause of action arises out of the same conduct underlying the alleged breach of contract." *Cusumano I*, 2025 WL 957699, at *7 (citation omitted) (collecting cases). The conduct Plaintiffs allege in their bad faith and breach of contract claims are identical. Indeed, Plaintiffs allege they meet the "fairly debatable" standard because they are "entitled to summary judgment as a matter of law *upon their breach of contract claim* for Defendants' denial of Plaintiffs' claim for coverage against the portions of the New York Action alleging errors or omissions during the Berkshire Policy period." (Am. Compl. ¶ 138 (emphasis added).) As a result, Plaintiffs' bad faith claim is duplicative.[12]

Count Five, accordingly, is **dismissed *with prejudice*.**[13]

### E.   Fraud (Count Six) and Negligent/Intentional Misrepresentation (Count Eight)

Common law fraud has five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that

---

[12] Plaintiffs also assert, in conclusory fashion, that Defendants acted in bad faith when they "filed baseless counterclaims for fraud as a way to intimidate Plaintiffs from pursuing their claim for coverage." (Am. Compl. ¶ 139.) But Plaintiffs' threadbare one sentence contention is devoid of any further factual development. As such, it does not render Plaintiffs' bad faith claim plausible. More to the point, Plaintiffs fail to show, and the pleadings do not suggest, that Defendants litigated this action in bad faith. Notably, there are disputes of material fact as to whether Plaintiffs fraudulently procured the Berkshire Policy and misstated whether they maintained continuous coverage. The Court need not resolve those issues. But, because there are disputes of material fact as to Defendants' litigation conduct, Plaintiffs "cannot maintain a cause of action for bad faith." *Ketzner*, 118 F. App'x at 599.

[13] Because the bad faith claim is duplicative and the plain language of the Berkshire Policy precludes coverage, the Court concludes that amendment would advance "a claim that is legally insufficient on its face." *J.W.S. Delavau Co.*, 106 F. Supp. 2d at 764.

19

the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997) (quoting *Jewish Ctr. of Sussex Cnty. v. Whale*, 86 N.J. 619, 624–25 (1981)). Intentional misrepresentation is identical to fraud. *See Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011). Rule 9(b)'s heightened pleading standard applies to fraud claims and requires the plaintiff "to state with particularity the circumstances constituting fraud." Negligent misrepresentation requires: "(1) an incorrect statement, (2) negligently made, (3) upon which plaintiff justifiably relied, and (4) resulted in economic loss or injury as a consequence of that reliance." *Noble v. Samsung Elecs. Am., Inc.*, No. 15-3713, 2018 WL 801590, at *5 (D.N.J. Feb. 8, 2018) (quoting *Mason*, 774 F. Supp. 2d at 704).

To state either claim, the plaintiff must show reasonable reliance on a misrepresentation. *Gennari*, 148 N.J. at 610; *Noble*, 2018 WL 801590, at *5. This is where Plaintiffs fall short.

Every insured has a duty to read their policy. *Martinez v. John Hancock Mut. Life Ins. Co.*, 145 N.J. Super. 301, 310 (App. Div. 1976). If the terms of the policy "are inconsistent with [the insured's] desires, he [or she] is required to notify the company of the inconsistency and of his [or her] refusal to accept the policy in the proffered condition." *Id.* "There is a fraud exception to this general rule of a duty to read." *Andrea v. Metro. Life Ins. Co.*, No. 00-911, 2000 WL 35361960, at *3 (D.N.J. Aug. 14, 2000). "The law is clear, however, that reasonable reliance on a prior oral representation cannot be established in the face of clear contradictory language in an insurance policy." *Davis v. Bankers Life & Cas. Co.*, No. 15-3559, 2016 WL 7668452, at *6 (D.N.J. Dec. 23, 2016); *see also Andrea*, 2000 WL 35361960, at *3 (holding that plaintiff "could not have reasonably relied on the [defendant's] misrepresentations because they were contradicted by the clear and unambiguous terms of the Policy."); *In re Nw. Mut. Life Ins. Co. Sales Pracs. Litig.*, 70

20

F. Supp. 2d 466, 488 (D.N.J. 1999), *aff'd,* 259 F.3d 717 (3d Cir. 2001) (same); *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 436 (D.N.J. 1998), *aff'd,* 172 F.3d 859 (3d Cir. 1998) ("A contractual provision flatly contradictory to prior oral assurances should cause most people—and particularly experienced, knowledgeable business people—to pause." (citation omitted)).

Plaintiffs cannot show reasonable reliance. Plaintiffs allege Sharpee falsely represented that the Berkshire Policy would provide coverage for claims arising from prior work. (Am. Compl. ¶ 144.) Even if Sharpee had misrepresented the scope of coverage (which, as discussed in greater detail below, he did not), the Berkshire Policy expressly conditions coverage for claims arising from prior work on maintaining continuous insurance coverage. Plaintiffs had access to the Policy before purchasing it. (*See* Defs.' Ex. D at *5.) And, as Cusumano himself acknowledged on the phone with Sharpee,

> [The Policy] says if your business first learns about a claim during this policy *and previously had continuous coverage that would have covered the claim*, we will cover that claim even though it is not the result of an occurrence during this policy. *Okay. Got it. Okay.*

(Feb. 16, 2022 Call Tr. 6:8–13 (emphasis added).) Based on the Berkshire Policy's plain text and Cusumano's stated understanding thereof, Plaintiffs could not have reasonably relied on any representation to the contrary. Because Plaintiffs cannot establish reasonable reliance in the face of the Berkshire Policy's express language, Counts Six and Eight are **dismissed *with prejudice*.**[14]

### F.      Count Seven: NJCFA

#### i.      *The NJCFA Does Not Apply to Defendants' Conduct*

The NJCFA covers the sale of insurance policies. *Myska v. N.J. Mfrs. Ins. Co.*, 440 N.J. Super. 458, 484 (App. Div. 2015). This includes "fraud both in the initial sale (where the seller

---

[14] As the plain language of the Berkshire Policy defeats reasonable reliance on any representation to the contrary, amendment would advance "a claim that is legally insufficient on its face." *J.W.S. Delavau Co.*, 106 F. Supp. 2d at 764.

never intends to pay), and fraud in the subsequent performance (where the seller at some point elects not to fulfill its obligations)." *Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 266 (3d Cir. 2007). Fraud in the initial sale involves "a true con artist [who] . . . does not intend to perform his undertaking . . . ; he means to pocket the entire contract price without rendering any service in return." *Id.* at 266 n.8 (alterations in original) (quoting *United States v. Schneider*, 930 F.2d 555, 558 (7th Cir. 1991)). Fraud in the subsequent performance involves a party who "stops complying with certain contract specifications while at the same time falsely representing strict compliance." *Id.* (quoting *United States v. Canova*, 412 F.3d 331, 353 n. 22 (2d Cir. 2005)).

But the NJCFA does not cover "[t]he mere denial of insurance benefits to which the plaintiffs believed they were entitled." *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998); *see also Myska*, 440 N.J. Super. at 485 (collecting cases). The bare allegation that an insurer "misrepresented the scope of their insurance policy" cannot sustain an NJCFA claim. *Baughman v. U.S. Liab. Ins. Co.*, 662 F. Supp. 2d 386, 401 (D.N.J. 2009). More is needed. For instance, in *Weiss v. First Unum Life Insurance Co.*, the plaintiff alleged "not merely a bad-faith denial of benefits limited to his case, but rather that his denial is one instance in a pattern of fraudulent activity by [an insurer] aimed at depriving its insureds with large disability payouts of their contractual benefits." 482 F.3d at 257. And in *Alpizar-Fallas v. Favero*, the plaintiff alleged her insurance company fraudulently induced plaintiff to waive claims against another policyholder as part of a pattern to strip policy holders of their rights to pursue litigation against other policyholders. 908 F.3d 910, 918 (3d Cir. 2018).

This case plainly concerns the mere denial of benefits. *Van Holt*, 163 F.3d at 168. Plaintiffs alleged solely that Sharpee misrepresented the scope of the Berkshire Policy's benefits; Plaintiffs filed an insurance claim; and Plaintiffs were denied benefits under the Berkshire Policy. *Alpizar-*

22

*Fallas*, 908 F.3d at 917. Plaintiffs do not claim that Defendants "pocket[ed] the entire contract price without rendering any service in return" or "stop[ped] complying with certain contract specifications while at the same time falsely representing strict compliance." *Weiss*, 482 F.3d at 266 n.8 (citations omitted). Nor have Plaintiffs asserted that Defendants engaged in a broader pattern of fraudulent conduct. The NJCFA, accordingly, does not reach Defendants' conduct.

### ii.   *Plaintiffs Do Not Allege Unlawful Conduct*

Even if the NJCFA applied to this denial-of-benefits case, however, Plaintiffs fail to allege Defendants engaged in any unlawful conduct. To state an NJCFA claim, the plaintiff must show (1) "unlawful conduct by defendant"; (2) "an ascertainable loss by plaintiff"; and (3) "a causal relationship between the unlawful conduct and the ascertainable loss." *Myska*, 440 N.J. Super. at 484 (quoting *Zaman v. Felton*, 219 N.J. 199, 222 (2014)). Unlawful conduct includes:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . .

N.J.S.A. 56:8-2.

Unlawful conduct, accordingly, may take the form of "an affirmative act, an omission, or a violation of an administrative regulation." *Gennari*, 148 N.J. at 605. "One who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive." *Id.* "For liability to attach to an omission or failure to disclose, however, the plaintiff must show that the defendant acted with knowledge." *Id.*

23

### a.    Affirmative Misrepresentations

The record is devoid of any affirmative misrepresentation. An actionable "misrepresentation has to be one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." *Id.* at 607 (citation omitted). Moreover, the statement's "qualitative content must be so materially deceptive and its capacity to mislead so apparent that proof of intent is unnecessary." *Viking Yacht Co. v. Composite One LLC*, 385 F. App'x 195, 201 (3d Cir. 2010) (quoting *Chattin v. Cape May Greene, Inc.*, 124 N.J. 520, 591 (1991) (Stein, J., concurring)). Having reviewed the call transcripts and email exchanges between the parties, the Court finds no instance where Sharpee affirmatively represented to Plaintiffs that the Berkshire Policy would cover claims arising out of prior work without the need for Plaintiffs to maintain continuous insurance coverage. (*See* Jan 21, 2022 Call Tr.; Jan. 28, 2022 Call Tr.; Feb. 16, 2022 Call Tr.; Defs.' Ex. D.) At most, Plaintiffs rely on Sharpee's response to Cusumano's request to compare the Berkshire Policy with a redacted copy of the Hanover Policy. (*See* Pls.' Opp'n at 33.) Sharpee stated:

> I can raise the limit for the liability to $2,000,000 per occurrence and $5,000,000 aggregate. Our policy has a $1000 deductible, I can not raise it to $5000 without underwriting approval. The policy wording showing that professional liability is in our policy which can be found here https://threeinsurance.com/the-policy. Anything not specifically excluded by the policy (exclusions are about ¾ of a page on the second to last page I believe) is included. That means your supplemental coverages and professional liability that you had listed should all be covered under Business Liability at $2M/$5M.

(Defs.' Ex. D at *5.)

Sharpee directed Plaintiffs to the Berkshire Policy and advised Plaintiffs that anything "not specifically excluded . . . is included." (*Id.*) At most, Sharpee opined that, *if* the Berkshire Policy did not specifically exclude a coverage, it *should* provide the same coverage as the Hanover

Policy—not that it *would*. Sharpee's statement was not materially deceptive; it was a disclosure followed by a conditional opinion, neither of which has the capacity to mislead.

### b.    Omissions

For an omission to give rise to NJCFA liability, the plaintiff must show the "defendant (1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment." *Judge v. Blackfin Yacht Corp.*, 357 N.J. Super. 418, 425 (App. Div. 2003). Plaintiffs assert "Sharpee failed to inform Plaintiffs that the disclosed gap in policies precluded coverage for new claims arising out of Plaintiffs' work preceding the policy inception date." (Pls.' Opp'n at 33.)

Not so. The record does not reflect that Sharpee knowingly concealed any difference between the Hanover and Berkshire Policies. To the contrary, he *gave* Plaintiffs a copy of the Berkshire Policy and *advised* Plaintiffs that anything not excluded was covered. Moreover, because Plaintiffs never disclosed that they were uninsured (and, in fact, redacted the expiration date in the copy of the Hanover Policy they sent to Sharpee), Sharpee could not have known that the Berkshire Policy would not have covered the New York Action.[15]

Because Plaintiffs fail to state an NJCFA claim, Count Seven is **dismissed *with prejudice*.**[16]

---

[15] Plaintiffs also place great weight on Sharpee's deposition testimony to show he made a material omission. The Court declines to consider it. The Court may consider an extrinsic document when "the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Schmidt*, 770 F.3d at 249 (quoting *In re Burlington Coat Factory*, 114 F.3d at 1426). None of Plaintiffs' claims are based on Sharpee's deposition. At most, the Amended Complaint cites the deposition once to purportedly show that Sharpee's statements were false. (Am. Compl. ¶ 93.)

In any event, Sharpee's deposition does not reveal he knowingly concealed a material fact. Sharpee testified his statement that the Berkshire Policy should provide the same coverage as the Hanover Policy "obviously was incorrect" because the Berkshire Policy did not provide "nose coverage." (*See* Pls.' Ex. A ("Pls.' Sharpee Dep.") 67:5–7, ECF No. 80-2.) But Sharpee also testified that the parties never "specifically talk[ed] about [a] nose policy." (*Id.* at 70:7–11.) Moreover, Sharpee *included* a copy of the Berkshire Policy, which is the opposite of knowing concealment.

[16] The Court concludes that further amendment would advance "a claim that is legally insufficient on its face." *J.W.S. Delavau*, 106 F. Supp. 2d at 764. Even if the NJCFA covered Defendants' conduct, the record (which includes

### G.      Malpractice (Count Nine) and Negligence (Count Ten)

Malpractice is "grounded in the tort of negligence." *McGrogan v. Till*, 167 N.J. 414, 425 (2001). "The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *G.A.-H. v. K.G.G.*, 238 N.J. 401, 413 (2019) (quoting *Robinson v. Vivirito*, 217 N.J. 199, 208 (2014)).

Insurance brokers and agents "generally owe the same duties to an insured." *President v. Jenkins*, 180 N.J. 550, 568 (2004). They must "exercise good faith and reasonable skill in advising insureds." *Id.* Insurance agents have duties "(1) to procure the insurance; (2) to secure a policy that is neither void nor materially deficient; and (3) to provide the coverage he or she undertook to supply." *Holm v. Purdy*, 252 N.J. 384, 405 (2022) (quoting *President*, 180 N.J. at 569). "Insurance companies and brokers [and agents] have a duty to advise insureds of their coverage needs where the insurer is aware of a particular peril." *Id.* (quoting *Sears Mortg. Corp. v. Rose*, 134 N.J. 326, 348 (1993)).

Plaintiffs argue Defendants were negligent in writing a policy with a continuous coverage provision, failing to notify Plaintiffs of that provision, and misrepresenting the scope of coverage. The Court disagrees. The record demonstrates Defendants did not breach a duty owed to Plaintiffs. Defendants provided Plaintiffs with the policy they sought, particularly where Cusumano identified the continuous coverage provision, repeated it word-for-word, and expressed that he understood it. (Feb. 16, 2022 Call Tr. 6:8–13.) Defendants had no duty to advise Plaintiffs about the continuous coverage provision because Defendants were unaware about Plaintiffs' coverage

---

Sharpee's deposition and all his communications with Plaintiffs) does not reveal any unlawful conduct. Plaintiffs' complaint, therefore, does not have a factual defect; it has a plausibility defect amendment cannot solve.

gap. Plaintiffs never indicated they had a break in coverage, referred to the Hanover Policy as their "existing policy" (Jan. 28, 2022 Call Tr. 7:15), and redacted the Hanover Policy's expiration date in communications with Sharpee, (Defs.' Ex. D at *13). And for the same reasons discussed above, Defendants did not misrepresent the scope of coverage. Count Ten, accordingly, is **dismissed *with prejudice***.[17]

### H.      Breach of Fiduciary Duty (Count Eleven)

A fiduciary relationship arises "when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *Hornor v. Upper Freehold Reg'l Bd. of Educ.*, 263 N.J. 120, 163 (2026) (quoting *F.G. v. MacDonell*, 150 N.J. 550, 563 (1997)). A fiduciary owes duties of loyalty and care to the dependent party. *Id.* "Accordingly, the fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship." *Id.* at 163–64 (quoting *F.G.*, 150 N.J. at 563).

Plaintiffs allege that a fiduciary relationship arose because Plaintiffs relied on Sharpee as a "licensed Small Business Advisor." (Am. Compl. ¶ 176.) Yet Plaintiffs offer no facts showing the relationship between a prospective insurance buyer and an insurance company's "licensed Small Business Advisor" has "such a character of trust and confidence as to render it reasonably certain that the one party occupied a dominant position over the other." *F.G.*, 150 N.J. at 563 (quoting *Blake v. Brennan*, 1 N.J. Super. 446, 453 (Ch. Div. 1948)). Nor can they. An insurance agent "owes a fiduciary duty to the insurance company, not to the insured." *Cusumano I*, 2025 WL 957699, at *9 (citing *Davis*, 2016 WL 7668452, at *9); *see also In re Nw. Mut.*, 70 F. Supp. 2d at

---

[17] The Court concludes that further amendment would advance "a claim that is legally insufficient on its face." *J.W.S. Delavau*, 106 F. Supp. 2d at 764. Plaintiffs' premise—that Defendants' failure to provide a policy without a continuous coverage provision or notify Plaintiffs of the same—is legally deficient. Further amendment will not fix the problem.

27

489. It is undisputed that Sharpee *was* a Berkshire insurance agent. Therefore, Sharpee owed a fiduciary to Berkshire, not Plaintiffs.[18] Accordingly, Count Eleven is **dismissed *with prejudice*.**[19]

## I.        Count Twelve: Contract Reformation

New Jersey courts may reform contracts "where there is a mutual mistake common to both parties." *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 85 F. Supp. 3d 785, 794 (D.N.J. 2015) (quoting *Sav. Inv. & Tr. Co. v. Conn. Mut. Life Ins. Co.*, 17 N.J. Super. 50, 55 (Ch. Div. 1951)). A mutual mistake arises when: (1) "both parties were laboring under the *same* misapprehension as to a particular, essential fact"; (2) the mistake "has a material effect on the agreed exchange of performances"; and (3) the contract, as written, "fails to express" what the parties actually intended. *Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 608 (1989) (cleaned up). But courts will not reform a contract to fix a mistake "resulting from the complaining party's own negligence," particularly where that negligence relates to "the duty imposed upon an insured to examine his policy upon receipt, and if its terms are found to deviate from the original contract agreed upon, to notify the insurer immediately and refuse to accept the policy." *Ensey v. Gov't*

---

[18] Plaintiffs cite *Glezerman v. Columbian Mutual Life Insurance Co.* for the proposition that "[a]n insurance agent may assume duties in addition to those normally associated with the agent-insured relationship." 944 F.2d 146, 150 (3d Cir. 1991). But that case dealt with a heightened standard of care, *not* a fiduciary relationship. *Id.* at 151.

Because "undivided loyalty is of the very essence of a trust relationship," an insurance agent likely cannot have parallel fiduciary relationships with both the insurance company and clients. *Hornor*, 263 N.J. at 164 (quoting *In re Est. of Carter*, 6 N.J. 426, 436 (1951)). Holding otherwise would be "incompatible" with the "defining characteristic of undivided loyalty to a particular person or interest." *Id.*

In any event, a client "must establish 'something more' than [an agent]-client relationship in order to impose a heightened standard of care on [an agent]." *Glezerman*, 944 F.2d at 151. In *Glezerman*, the "something more" was a twenty-year relationship between the clients and their insurance broker, that the insurance broker set up a special system permitting the clients to make their payments as late as possible, and that the insurance broker told the client she had more time to pay her premium and not to worry about it. *Id.* at 148, 151. And in *Triarsi v. BSC Group Services, LLC*, the "something more" was that the broker maintained regular communications with the client, assumed responsibility for ensuring premiums were paid, and on one occasion advanced the premium himself. 422 N.J. Super. 104, 109 (App. Div. 2011). Here, by contrast, Sharpee spoke with Plaintiffs only a handful of times in one month as part of an ordinary "arms length transaction between an agent for an insurance company and an applicant for insurance." *Nw. Mut.*, 70 F. Supp. 2d at 489.

[19] Because Sharpee was undisputedly Berkshire agent and did not owe a fiduciary duty to Plaintiffs, amendment would advance "a claim that is legally insufficient on its face." *J.W.S. Delavau*, 106 F. Supp. 2d at 764.

*Emps. Ins. Co.*, 92 F. Supp. 3d 253, 261 (D.N.J. 2015) (quoting *Bilotti v. USAA Cas. Ins. Grp.*, 2007 WL 4119220, at \*4 (N.J. Super. Ct. App. Div. Nov. 21, 2007), *aff'd,* 663 F. App'x 172 (3d Cir. 2016).

To the extent Plaintiffs allege a mistake, it resulted from their own negligence. Plaintiffs, like all insureds, had a duty to read the Policy, inform Berkshire of any unacceptable terms, and refuse to accept the Policy. Cusumano, however, read the continuous coverage provision out loud, expressed his understanding of the term, and entered the Policy anyway. In any event, both parties were not laboring under the same misapprehension about continuous coverage, because Plaintiffs never raised the issue and represented to Defendants that they were continuously insured. Accordingly, Count Twelve is **dismissed** *with prejudice*.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss or for judgment on the pleadings (ECF No. 79) is **GRANTED**. An appropriate Order accompanies this Opinion.

**DATED: 6/25/2026**

_____
**JULIEN XAVIER NEALS**
**United States District Judge**

29